## WHITE RIVER SCHOOL TOWNSHIP *v.* THE CAXTON COMPANY.

[No. 4,865. Filed November 3, 1904.]

1. TOWNSHIPS. — *Schoolhouses.* — *Indebtedness.* — *Warrant.* — *Complaint.*—Where a complaint against a school township, after setting out the execution of a warrant in favor of plaintiff by the defendant township, alleged that the money mentioned in such warrant was delivered to and actually received by such township and used in the erection of a schoolhouse which was necessary and that such township still retained the benefit thereof, and that such township at such time did not have sufficient money on hands with which to build such house, such complaint is sufficient on demurrer. p. 10.

2. NEW TRIAL.—*Receipt of Money by School Township.—Evidence.*— Where the only evidence of the receipt of money by a school township was the trustee's general statement that the money went into the schoolhouse mentioned in the warrant, but he further testified that he kept no separate bank account; that he mingled his own and the township's funds indiscriminately and so paid them out; that he could not say any of the identical money received for the warrant went into the schoolhouse; that he did not charge himself as trustee with such money for about two years after its receipt, and just before retiring from office; and that he was unable to tell the name of any person to whom any of such money was paid, is insufficient to sustain a finding that such township received such money. p. 12.

3. SAME.—*Schoolhouse.—Funds to Build.—Evidence.*—Where it is incumbent upon the plaintiff to prove the want of funds with which to build a schoolhouse, proof that such fund had to its credit $2,219.23, and that the expenditures were $1,300, does not sustain a finding for plaintiff. p. 13.

4. JUDGMENT.—*Amount.*—Where, in an action against a school township on a warrant for borrowed money, the proof showed either that such township received all or none of such money, a judgment for one-half of such amount is not sustained. p. 13.

From Johnson Circuit Court; *W. J. Buckingham,* Judge.

Action by The Caxton Company against White River School Township. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*W. A. Johnson, R. M. Miller* and *H. C. Barnett,* for appellant.

*W. E. Deupree* and *L. Ert Slack,* for appellee.

Roby, P. J.—The substance of the amended complaint upon which this case was tried is that one John R. Brickert was, on August 14, 1896, the legally elected, qualified and acting trustee of the defendant township, and so continued until February 12, 1898; that on said 14th day of August the township became indebted to the appellee in the sum of $500, with interest at seven per cent. per annum from said date, as evidenced by a promissory note due on or before the 20th day of June, 1897, issued in the name of said township, per John R. Brickert, said instrument being in terms as follows: "$500. State of Indiana. Trustees No. —. Issued this 14th day of August, 1896, at Bluffcreek, Indiana. On or before the 20th day of June, 1897, White River township of Johnson county, State of Indiana, will pay to The Caxton Company of Chicago, Illinois, or order, the sum of $500, value received, with interest thereon at the rate of eight per cent. per annum from the 14th day of August 1896, until paid, together with attorneys' fees, waiving valuation and appraisement laws of the State of Indiana. For money advanced to special school fund. The undersigned trustee hereby certifies that the present indebtedness of said township is not such as to prevent the payment of this order when due. Payable 189—, at Citizens National Bank, Franklin, Indiana. Caxton, No. 2,800." That at said time such trustee was erecting a schoolhouse in district No. 8 of said township, which was

White River School Tp. *v.* The Caxton Co.

necessary for the educational purposes thereof, and that, in order to erect and complete the same, it became necessary for him to borrow money and incur debts on behalf of said township, and that he represented to appellee that it was necessary therefor that he have the sum of $500; relying on which representation appellee turned over to him the following sums of money at the following times, to wit, about October 1, $175, October 17, $125, October 23, $100, December 5, $50, all in 1896, and January 4, 1897, $50, which sums were received by said trustee, who, as evidence thereof, "executed and delivered" the "above-mentioned note or warrant;" "that at said time said township had not sufficient funds belonging to the special school fund of said township with which to pay for the erection and completion of said schoolhouse, and that the whole of said funds so loaned to the defendant was required for the erection and completion thereof, and was used by said trustee in paying for the erection and completion thereof, and said township received and retains the benefit thereof; that the debt so contracted was not in excess of the funds on hand in said special school fund and the fund to be derived from the tax assessed for the year 1896," "that said sum is due and unpaid, wherefore," etc.

A demurrer to this pleading for want of facts was overruled. A general denial was then filed, and upon the issue thus joined trial was had by the court without a jury, and a general finding made in favor of the plaintiff for $250.

Appellant's motion for a new trial was overruled and judgment entered in accordance with the finding. Assignments of error are based upon the action of the court in overruling the motion for a new trial and the demurrer to the complaint.

1. The point made against the complaint is that the necessity alleged to have existed for borrowing money is not shown to have existed at the time the money was furnished. The pleading is subject to criticism, attributable to the

peculiar character of the transaction disclosed, but in sub-
stance is sufficient in the respect indicated.

The motion for a new trial challenges the sufficiency of
the evidence, a resumé of which will not prove uninterest-
ing.　The Caxton Company was a corporation located at
Chicago, Illinois, and engaged in the sale of school sup-
plies and furniture.　Loaning money was not a part of its
business, although it had the power to do so, and sometimes
made loans to accommodate its customers, but "would
rather not do it."　The gentleman who was its vice-presi-
dent and secretary at the time of the transaction in ques-
tion was a witness, and testified to the foregoing, among
other facts.　The former trustee, Brickert, was also a wit-
ness, as was the contractor who built the schoolhouse.　The
evidence of the latter related principally to the contract
price paid and the terms and manner of payment, which,
for present purposes, are not of controlling importance.

Appellee's right to recover is grounded upon the proposi-
tion that appellant has received and retains the benefit of
the money advanced, and should, in "equity and justice,"
repay it.　*White River School Tp.* v. *Dorrell* (1901), 26
Ind. App. 538.　It was therefore incumbent upon it to
prove the receipt of the money by the township.　On
August 14, 1896, Brickert executed and mailed to appellee
the township warrant set out in the complaint, without hav-
ing received a cent of money, or without having had, so far
as the evidence shows, any promise of any money from it.
It appears that about the same time he borrowed $500 from
William Dorrell, for which sum a judgment has heretofore
been rendered against said township. *(White River School
Tp.* v. *Dorrell, supra.)*　The trustee's January, 1896, draw
of special school fund was $590.71, his June draw, $1,628.-
52; making a total, including said loan, of $2,719.23 of
said fund then on hand.　The contract price paid for erect-
ing said schoolhouse was $1,300.　What disposition had
been made of the remainder of said fund is not shown by

the evidence, except as it is inferable that portions of it, at least, were diverted to private use.

About the first of October following the receipt of the warrant by appellee, its vice-president and secretary met Brickert at an Indianapolis hotel, and was told by him that he wanted money to complete a schoolhouse; wanted to borrow it for the township, and could pay it by a certain time. Appellee's said officer was asked to tell exactly what was said, and answered: "I had to cross-examine him on that point." He, however, paid to Brickert $175 at that time, taking a receipt therefor. The next payment was sent from Chicago by check, the next one paid by forwarding a $100 bill by a registered letter from Chicago to Bluffcreek. The first $50 was also sent by registered letter, and the last amount given to Brickert while in appellee's office at Chicago, it handing him a check for $81 and receiving in return his check for $31, the explanation being that he "wanted to use $81 for some purpose." The name of the township does not appear in the transaction after the issuance of the warrant, checks and receipts being made payable to or signed individually by Brickert, who was unable to remember whether he also issued to The Caxton Company on the same day other warrants for $175, $395 and $450. There was evidence that various letters had been written in connection with these transactions, but none of such letters were introduced in evidence or accounted for. The examination of the two main witnesses was unduly restricted, invoking as it did equitable aid. Appellee invited the fullest investigation of its dealing with said township and its trustee, both in his private and public capacity, and such investigation should have been accorded to it.

2. The only evidence tending to show that appellee's money was used to build the schoolhouse in district No. 8 is in the testimony of Brickert, and while, in general terms, he stated that it went into the house, his statement was

qualified by specific facts elicited from him. He kept no separate bank account. He commingled his own funds, which were apparently not inconsiderable, with those of the township, paying them out indiscriminately. He testified that he could not say that any of the identical money received from appellee went into the building. He kept a trustee's record in which he charged himself with moneys received for the township. Made no charge therein of any part of the $500 sued for in 1896, but two years later—in 1898, shortly before his retirement from the office —did make an entry of the amount. He was unable to tell the place, when, for what, or to whom, any of this money was paid. His general statement, upon which appellee relies to sustain the judgment, is not effective to that end when taken in connection with all the qualifying facts to which he testified.

3. Appellee undertook to show that the township did not have sufficient money belonging to the special school fund with which to pay for the erection and completion of said schoolhouse. The fact was one susceptible of accurate and incontrovertible proof. The testimony of Brickert showed that he had received $2,719.23 to the credit of that fund, and did not show any legitimate expenditure thereof, except as of said $1,300. The evidence is not sufficient to support the finding in other respects, which need not be indicated. The questions propounded to Brickert by the skilful counsel for appellee were in part as follows: "What is your impression whether the special school fund was overdrawn?" "I will ask if you have any impression how much it was overdrawn?" The loose generalities behind which fraud loves to lurk, and which frequently obscure truth, abound in the testimony of this witness.

4. The learned trial judge found for one-half the amount claimed. The process by which this result was reached is unknown. Appellee is either entitled to recover $500, with interest from the time the money was received

by the township, or it is not entitled to recover anything. The evidence does not show that its money was received by the township, nor that a necessity for borrowing it existed.

Judgment reversed, and cause remanded, with instructions to sustain motion for a new trial.